Frank A. LOPEZ, in behalf of William Sorenson, Petitioner,

v.

Edward LEVI, Attorney General of the United States et al., Respondents.

No. 76 Civ. 4427 (CHT).

United States District Court,
S. D. New York.

Oct. 12, 1976.

Frank Lopez, Brooklyn, N.Y., for petitioner.

Robert B. Fiske, Jr., U.S. Atty., by Thomas H. Sear, New York City, for respondents.

Eugene Gold, Dist. Atty., Kings County, by Douglas Eric Grover, Brooklyn, N.Y., for intervenors.

TENNEY, District Judge.

Petitioners bring this application for an order of this Court restraining the Warden of the Metropolitan Correctional Center in New York ("M.C.C.") from producing petitioner William Sorenson for trial in a crimi-

nal prosecution in the Supreme Court of the State of New York, County of Kings, allegedly in violation of the Interstate Agreement on Detainers. For the reasons set forth below, this application is denied.

Sorenson was arrested in December 1974 under a Kings County indictment charging him with various counts of sale and possession of dangerous drugs and was held in the custody of the New York City Department of Correction. In March 1975 Sorenson was charged under a second indictment in Kings County with conspiracy and various substantive narcotics offenses. Sorenson was subsequently indicted in the United States District Court, Southern District of New York, on various narcotics charges. Sorenson was produced to stand trial in federal court upon a federal writ of habeas corpus ad prosequendum. Such procedure is regularly followed by the United States Attorney's office in this district to secure the presence of state detainees at trial. Sorenson was convicted before District Judge Knapp on February 26, 1976, and was sentenced to a term of twenty-five years and special parole of twenty years thereafter. Sorenson then stood trial in Kings County and was convicted of the charges in the first Kings County indictment against him and was sentenced on June 9, 1976 to four concurrent terms of twenty-five years to life to run concurrently with the federal sentence.

It appears that on or about July 12, 1976, petitioner sought to be transferred into federal custody to commence service of his federal sentence. It is contended that the office of the District Attorney of Kings County opposed the surrender of custody

"on the grounds that petitioner still faced charges under Kings County Indictment Number 1519/1975 [the second indictment charged by the Kings County grand jury], and that transfer into federal custody would not only complicate subsequent production of the petitioner, but would also cause great expense and exertion of manpower by the People of the State of New York." [Affidavit of Doug-

las Eric Grover, Assistant District Attorney, Kings County, at 2].

Nevertheless, the petitioner was transferred from the New York State Department of Correction to the Federal Bureau of Prisons in August 1976 and thereafter relocated to the federal penitentiary in Atlanta, Georgia.

It appears that on or about September 7, 1976, the Kings County Supreme Court was ready to commence the trial against Sorenson on the second indictment filed in that court. Accordingly, the Kings County District Attorney filed a detainer pursuant to the Interstate Agreement on Detainers ("the Act") on September 10, 1976 in order to secure the presence of the petitioner at trial. Thereupon Sorenson refused to waive extradition "and under the provision of the thirty (30) day grace period protested the detainer and sought to obtain counsel in Georgia to attack the detainer on grounds that New York surrendered jurisdiction and thereby their right to try him on the second Kings County indictment." (Petition ¶ 12). It further appears that upon the request of the Administrative Judge of the Kings County Supreme Court, the Attorney General of the United States agreed to relocate Sorenson to the M.C.C. pursuant to his authority under 18 U.S.C. § 4082.

Once Sorenson was situated in New York state, the District Attorney of Kings County sought the daily production of the petitioner at the trial in Kings County pursuant to a writ of habeas corpus ad prosequendum under New York Crim.Pro.L. § 580.30. The writ was signed on September 24, 1976 by a justice of the Kings County Supreme Court and served upon the federal authorities. Accordingly petitioner has appeared on a daily basis since September 29, 1976 for trial in Kings County while remaining at all times in the custody of a United States Marshal. Jury selection for the trial upon the second state indictment commenced on September 30, 1976, the jury was sworn on the morning of October 6, and the trial is presently in progress. At 4:30 p.m. on October 6, 1976 the instant application was

presented to this Court by order to show cause. The Court held a hearing on this application on October 8, 1976 in which the office of the District Attorney of Kings County, having the real interest in this proceeding, was permitted to appear as intervenor. An assistant in the office of the United States Attorney informed the Court by telephone that it had no position in the matter.

■ The Court concludes that both the federal and state authorities proceeded lawfully in the above-mentioned actions. It appears that the Kings County authorities acted properly under New York Crim.Pro.L. § 580.30 in obtaining a writ of habeas corpus ad prosequendum which is designed for "securing attendance of defendants confined in federal prisons" at state prosecutions. The language of Section 580.30 is explicit, and the prescribed procedure was followed here.

■ The Court does not accept petitioner's contention that his rights under the Interstate Agreement on Detainers have been violated. Article I of the Act clearly sets forth the purposes and policies of its provisions as follows:

"The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

The Act, then, was intended to afford prisoners the right to speedy dispositions of outstanding criminal charges in order to eliminate the acknowledged adverse effect upon rehabilitation and probation caused by the existence of a detainer. Equally important to the draftsmen of the Act was enactment of a formal procedure to guarantee a cooperative effort among states [1] in securing the presence of prisoners incarcerated in other jurisdictions.

Article IX of the Act directs that its provisions "shall be liberally construed so as to effectuate its purposes." The purpose for which Sorenson was brought to Kings County—the speedy trial of an outstanding criminal charge—comports precisely with the purpose of the Act.

■ Furthermore, the Act, codified in New York under Crim.Pro.L. § 580.20, is not inconsistent with the provision for obtaining a writ of habeas corpus ad prosequendum under Section 580.30 of that law nor with the provision for extradition under Section 580.10.

■ There is no indication in the New York statutory scheme that one method was meant to be superior. Nor has petitioner shown the Court any indication from the sparse legislative history of the Act that it was meant to be exclusive. It is highly unlikely that federal and state legislators could have repealed *sub silentio* a judicial power as significant and long-recognized as the writ in question. *See Ponzi v. Fessenden,* 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922). It is a fundamental principle of statutory construction that express legislation is not repealed by mere implication or inference in subsequent legislation. Sorenson technically remains in federal custody until proceedings on the detainer under the Act are consummated on October 12, 1976, at which time petitioner will be placed in the temporary exclusive custody of the appropriate state authorities.

1. Article II(a) defines "state" as including the United States of America.

■ Petitioner claims that the 30-day period referred to in Article IV(a)[2] of the Act provides a time period in which a detainee may apply to the "governor" of the sending state to deny the request for temporary custody or availability in another jurisdiction. This right is still intact. The "sending state" in this case is the United States; hence "governor" would appear to refer to the office of the chief executive of the United States. The United States Attorney General in this case has already agreed to the physical transfer of Sorenson from the Atlanta federal facility to the New York federal facility. Since Sorenson technically remains in federal custody, the writ does not abrogate the possibility of the chief executive disapproving the request for temporary relinquishment of custody to the state authorities.

■ Finally, the Attorney General was acting under the statutory authority of 18 U.S.C. § 4082 in ordering the transfer from the federal facility in Atlanta to the federal facility in New York and petitioner has no basis for alleging a constitutional deprivation by virtue of that transfer. *See Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

For these reasons, this Court must decline to grant petitioner's application herein. A contrary result would vitiate the purpose and the spirit of the Act. As Judge Learned Hand observed:

"There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it." *Federal Deposit Insurance Corp. v. Tremaine*, 133 F.2d 827, 830 (2d Cir. 1943).

Accordingly, the petition is dismissed.

So ordered.

2. Article IV(a) states in pertinent part:

"[T]here shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."