COMMONWEALTH vs. THOMAS M. FASANO.

Middlesex.    April 10, 1978. — May 9, 1978.

Present: KEVILLE, GRANT, & BROWN, JJ.

*Practice, Criminal,* Defendant in custody of another jurisdiction, Detainer. *Waiver.*

A prisoner in Federal custody, who had requested final disposition of indictments in Middlesex County which had been the subject of a detainer issued under the Interstate Agreement on Detainers, and who was thereafter brought into the Commonwealth under a writ of habeas corpus ad prosequendum for trial of a pending unrelated indictment in Suffolk County and returned to Federal custody at his original place of confinement without any disposition of the Middlesex indictments, was not entitled thereby to dismissal of the Middlesex indictments under art. IV(e) of the agreement as the writ did not constitute a detainer within the meaning of the agreement. [328–331]

A prisoner who was brought into the Commonwealth pursuant to the Interstate Agreement on Detainers for trial of indictments had, in the circumstances, waived the benefit of art. III(a) of the agreement, requiring that he be brought to trial within 180 days of his request for final disposition of the indictments, and a motion to dismiss the indictments on this ground was properly denied. [331–334]

INDICTMENTS found and returned in the Superior Court on October 18, 1974, and November 18, 1974.

Motions to dismiss were heard by *Ronan,* J., and the cases were tried before him.

*Dyanne Klein Polatin* for the defendant.

*Stephen J. Kiely,* Assistant District Attorney, for the Commonwealth.

GRANT, J. The defendant has appealed from his convictions on a mixed bag of indictments for forgery and uttering, larceny, attempted larceny and possession of an altered license to operate motor vehicles which were re-

turned by the grand jury which sat in Middlesex County in October and November, 1974. The only questions argued on appeal arise out of the denial of the defendant's motion to dismiss the indictments under arts. IV(*e*) and V(*c*) of the Interstate Agreement on Detainers (Agreement), to which both the Commonwealth (St. 1965, c. 892, § 1) and the United States (Pub. L. No. 91-538, 84 Stat. 1397 [1970]) are parties. The following is a summary of the material facts which can be gleaned from the docket entries, a rather disjointed record, and certain undisputed recitals appearing in the briefs of the parties.

The defendant was duly arraigned on all the indictments. Following various continuances which are of no present moment, the defendant was defaulted on each indictment on November 10, 1975. On February 24, 1976,[1] the defendant was sentenced by the United States District Court for the District of Massachusetts to serve a term of two years in prison for an unrelated firearms violation. The first fifteen days of that sentence were served in the Suffolk County (Charles Street) jail, after which the defendant was transferred to the Federal Correctional Institution in Danbury, Connecticut.

On March 19 the district attorney for the Northern District (Middlesex County) forwarded to the warden of Danbury a copy of the capias which had issued out of the Superior Court sitting in Middlesex County by reason of the defendant's defaults, as well as a list (by docket numbers) of all the aforementioned Middlesex indictments. It is agreed that this communication constituted a "detainer" within the meaning of the Agreement and that it was duly received in Danbury. On April 13 the defendant executed a request under art. III(*a*) of the Agreement for final disposition of all the Middlesex indictments, and on the same day the warden of Danbury transmitted that request and the certificate of status contemplated by art. III(*c*) to the district attorney in Middlesex County, with

---

[1] All subsequent dates referred to herein were in 1976.

copies of both documents to the clerk of the courts there. The papers were received in both offices on April 20.

On April 27 or 28 the defendant was brought from Danbury to Boston in connection with another unrelated indictment which was then pending against him in Suffolk County, and was lodged in the Charles Street jail. His presence in Boston appears to have resulted from the service on the United States marshal at Boston of a writ of habeas corpus and prosequendum which had issued out of the Superior Court sitting in Suffolk County.

On May 17 the district attorney in Middlesex County forwarded to the warden of Danbury the papers necessary to secure the latter's authorization to release the defendant into the custody of the Massachusetts State police, together with advice that the Middlesex indictments were scheduled for trial on May 21. On May 19 the district attorney in Middlesex was advised by Danbury (apparently by telephone) that the defendant was unavailable by reason of his having been taken to Boston in connection with the Suffolk indictment. It is not disputed that the district attorney in Middlesex had not previously been aware of the Suffolk proceedings; nor is it disputed that he made no effort to secure the defendant's presence in Middlesex during the course of the Suffolk proceedings.

On May 27 the defendant was moved to the Essex County house of correction in Lawrence, where he remained until he was taken back to Danbury on July 15 following the conclusion of the proceedings in Suffolk.[2] On July 23 Danbury released the defendant into the custody of the State police, who lodged him in the Middlesex County house of correction in Billerica. This transfer was for the purpose of honoring the aforementioned request of the

---

[2] We do not know what disposition, if any, was made of the Suffolk indictment. It seems likely, but again we do not know, that the defendant remained in the custody of the United States marshal throughout the course of the Suffolk proceedings. See *Commonwealth* v. *Domanski*, 332 Mass. 66, 72 (1954).

defendant for disposition of the Middlesex indictments. The defendant was brought into the Superior Court sitting in Middlesex County at Cambridge on July 26, at which time all the defaults were removed. Following various continuances which will be discussed in part 2 of this opinion, on November 2 the defendant filed a motion to dismiss all the indictments under arts. IV(e) and V(c) of the Agreement. The motion was heard and denied on the same day. Trial by jury commenced on November 8, and the defendant was convicted on all the indictments on November 10. The defendant served the balance of his Federal sentence at Billerica and was then transferred to the Massachusetts Correctional Institution at Norfolk as a State prisoner to serve the sentences imposed in the present case.

1. Article IV of the Agreement contains provisions by which a prisoner may be brought into a receiving State at the request of a prosecutor therein who wants the prisoner for trial on a pending indictment, information or complaint and who has previously filed a detainer against the prisoner in the sending State. That article concludes: "(e). If trial is not had on any indictment, information or complaint *contemplated hereby* prior to the prisoner's being returned to the original place of imprisonment . . ., such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice" (emphasis supplied).

The first ground of the motion to dismiss was that the Superior Court was required to dismiss all the Middlesex indictments because the defendant had been brought into the Commonwealth on the Suffolk indictment and then returned to Danbury without any disposition having first been made of any of the Middlesex indictments. There is no evidence that the district attorney for the Suffolk District had ever filed a formal detainer with the warden of Danbury prior to securing the issuance of the writ of habeas corpus ad prosequendum out of the Superior

Court sitting in Suffolk County. The Commonwealth points to the portion of art. IV(e) which has been italicized above, points to the procedure by which a prosecutor could secure the presence of a Federal prisoner here prior to the enactment of the Agreement by our Legislature (see G. L. c. 248, § 24; *Commonwealth* v. *Domanski*, 332 Mass. 66, 71–73 [1954]; *Commonwealth* v. *McGrath*, 348 Mass. 748, 750–751 [1965]; *Commonwealth* v. *Swenor*, 3 Mass. App. Ct. 65, 67 [1975]), argues that the Suffolk writ was issued pursuant to the prior procedure, argues that that procedure has not been supplanted by the Agreement, and concludes that art. IV(e) of the Agreement has no application to the circumstances of the present case. We add on that side of the scale our own observation that the warden of Danbury, who appears to have been meticulous about the paper work required in connection with the defendant's request under art. III, appears not to have regarded the Suffolk writ as falling within the parameters of art. IV because he did not notify the district attorney in Middlesex County in the manner required by the second sentence of art. IV(b) that the defendant was being sent to Suffolk County. See *State* v. *Masselli*, 43 N.J. 1, 9–10, 11 (1964).

The defendant points to a split of authority in the Federal courts as to whether a writ of habeas corpus ad prosequendum issued by a United States District Court for a State prisoner under the provisions of 28 U.S.C. § 2241(c) (5) (1970) constitutes a "detainer" within the meaning of art. IV(a) of the Agreement and urges us to follow those courts which have either assumed or reached a reasoned conclusion that such a writ is a "detainer," a request for temporary custody of the prisoner within the contemplation of art. IV(a), or both. See *United States* v. *Ricketson*, 498 F.2d 367, 373 (7th Cir.), cert. denied, 419 U.S. 965 (1974); *United States ex rel. Esola* v. *Groomes*, 520 F.2d 830, 836–839 (3d Cir. 1975); *United States* v. *Mauro*, 544 F.2d 588, 591–593, 594 (2d Cir. 1976), cert. granted, 434 U.S. 816 (1977); *United States* v. *Ford*, 550 F.2d 732, 736–

742 (2d Cir.), cert. granted, 434 U.S. 816 (1977); *United States* v. *Sorrell,* 562 F.2d 227, 229–232 (3d Cir. 1977); *United States* v. *Thompson,* 562 F.2d 232, 233–235 (3d Cir. 1977); *United States* v. *Evans,* 423 F. Supp. 528, 531 (S.D.N.Y. 1976), aff'd without opinion, 556 F.2d 561 (2d Cir. 1977). Contrast *United States* v. *Scallion,* 548 F.2d 1168, 1171–1173 (5th Cir. 1977); *United States* v. *Kenaan,* 557 F.2d 912 (1st Cir. 1977); *Ridgeway* v. *United States,* 558 F.2d 357, 358–362 (6th Cir. 1977); *United States* v. *Eaddy,* 563 F.2d 252, 255 (6th Cir. 1977); *Huff* v. *United States,* 437 F. Supp. 564, 567–569 (W.D. Mo. 1977). See also *United States* v. *Simmons,* 437 F. Supp. 621, 622–623 (W.D. Pa. 1977).

Most of the Federal cases which have reached the result contended for by the defendant have done so on the basis of particular statements found in the legislative documents which were generated in Congress during the course of its consideration of the Agreement some five years after it had already become law here.[3] We do not understand any of those cases to find anything in the language of the Agreement itself which expresses an intention that its signatories must renounce the use of the writ of habeas corpus ad prosequendum as a means of securing the presence of a prisoner from another State which is willing to release him. All the cases we have found which have considered the present question have concluded that when such a writ issues out of a State court it does not constitute a detainer within the meaning of the Agreement. See *Lopez* v. *Levi,* 422 F. Supp. 846, 849 (S.D.N.Y. 1976); *People* v. *Uplinger,* 45 Ill. App. 3d 558, 560, 562 (1976); *People* v. *Valenti,* 90 Misc. 2d 904, 907–908 (N.Y. Monroe County Ct. 1977); *People* v. *Squitieri,* 91 Misc. 2d 290, 292–293 (N.Y. Sup. Ct. 1977).

We think the better reasoning is displayed by the State and Federal cases which hold that the writ of habeas

---

[3] The Agreement was adopted in Massachusetts in 1965 but was not adopted by the United States until 1970. See 84 Stat. 1403.

corpus ad prosequendum is not supplanted by art. IV of the Agreement. Accordingly, we hold that there was no error in denying the motion to dismiss so far as concerns the first ground set out therein.

2. Articles III(a) and V(c) of the Agreement, when read together, provide that when a prisoner is brought into a State pursuant to his written request for final disposition of an untried indictment the indictment must be dismissed if the prisoner is not tried within 180 days after he shall have caused his request to be delivered to the prosecuting officer and to the appropriate court of the prosecuting officer's jurisdiction, "provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter, may grant any necessary or reasonable continuance" (art. III[a]).[4] The second branch of the motion to dismiss the indictments in the present case is grounded on those provisions. Accordingly, we turn to an examination of the portions of the record which deal with the various continuances which were granted following the defendant's return to the Commonwealth on July 23, 1976. In the discussion which ensues we shall assume in the defendant's favor, without deciding, that the 180-day period began to run on April 13, 1976, when the defendant executed his request for final disposition of the indictments and delivered it to the warden of Danbury.[5] On that basis, the 180th day was October 10, 1976.

The record discloses the granting of several continuances between July 26, when the defaults were removed, and October 7, when the indictments were all called in

---

[4] Article VI(a) contains an additional provision for the tolling of the 180-day period, but neither party has argued that that provision has any application to the circumstances of the present case, and we do not consider it.

[5] The starting date of the 180-day period has not yet been determined as matter of law by either of our appellate courts. See *Commonwealth* v. *Burke*, 373 Mass. 569, 571–572 (1977); *Commonwealth* v. *Carrillo*, 5 Mass. App. Ct. 812 (1977).

the first criminal (assignment) session of the Superior Court sitting in Cambridge. We need not examine the reasons for those continuances because the prosecution was ready for trial on the latter date, which was still within the 180-day period. Neither the defendant nor his counsel was present at the call, and the case was sent to a different session. The defendant's counsel appeared in the second session and served a copy of the motion to dismiss on the assistant district attorney, who, so far as the record discloses, had previously been unaware of the defendant's intention to file any such motion.[6] The assistant district attorney requested time in which to study the issues raised by the motion, to which counsel for the defendant was agreeable. As the latter stated during the course of the subsequent hearing on the motion, "You [the assistant] needed time and we agreed to that continuance by agreement to give you the time to do the research you wanted to do in the case law." The judge in the second session, when advised of the situation, ordered that the motion be filed and heard in the first session on October 15.

Neither the defendant nor his counsel was present in court when the case was called in the first session on October 15.[7] The judge continued the case until November 2 ("no further continuances on the motion"), when both counsel were present and the defendant's motion was actually filed, argued and denied.[8] The trial was set

[6] The motion had been prepared and signed by the defendant himself, and we do not know when counsel for the defendant first learned of it. The method of computing the relevant time period which is set out on the face of the motion has now been abandoned.

[7] Counsel for the defendant was engaged in a probable cause hearing in a District Court and had advised the judge in the first session in the Superior Court that he would not be present at the call of this case.

[8] On November 2 the assistant district attorney filed, and the judge allowed, a loosely phrased motion for a "continuance of the 180 days allowed for commencement of trial under the ... Agreement." As neither brief seeks to make any point of this motion or its allowance, we need not and do not consider whether a court can grant a valid

for and commenced on November 8, which was the 209th day according to the method of computation employed in this opinion.

The defendant argues (1) that the Commonwealth has failed to show "good cause" for not bringing him to trial within 180 days, within the meaning of the above quoted proviso of art. III(a) of the Agreement, and, in any event, (2) that the continuance until November 2 which was granted on October 15 was invalid because neither the defendant nor his counsel was present in court when that continuance was granted. If we were to accept the second argument, we would still pass the first one because the denial of the second branch of the motion was justified on a ground separate and distinct from either argument, that of waiver. All the cases which have been brought to our attention or which we have found have concluded that the time limitations on bringing a prisoner to trial which are found in the Agreement (see arts. III(a) and IV[c]) are intended for his benefit and that he can waive them. See *United States* v. *Ford*, 550 F.2d at 742; *People* v. *Dye*, 45 Ill. App. 3d 465, 467 (1977); *Holland* v. *State*, 265 Ind. 216, 223–224 (1976); *People* v. *White*, 33 App. Div. 2d 217, 220–221 (N.Y. 1969); *People* v. *Squitieri*, 91 Misc. 2d at 294, 295. Compare *United States* v. *Scallion*, 548 F.2d at 1170 (estoppel); *People* v. *Bernstein*, 74 Misc. 2d 714, 715 (N.Y. Dutchess County Ct. 1973) (same). Contrast *Commonwealth* v. *Gregg*, 470 Pa. 323, 334 (1977).

We think the record discloses such a waiver in the present case. On October 7, the 177th day, when the prosecution was ready for trial, the defendant first presented his motion to dismiss. The motion and its supporting memorandum, which comprise thirteen pages of the record on appeal, had obviously not been prepared in haste. Indeed, the motion recites at one point that "I am

___

continuance after the expiration of the 180 days. See *State* v. *Lippolis*, 107 N.J. Super. 137, 143–145 (1969), rev'd per curiam, 55 N.J. 354 (1970).

incarcerated at . . . Danbury," from which the defendant had been brought on the previous July 23. The orderly administration of justice required that the motion be heard and determined before any trial could commence. We are of the opinion that the presentation of the motion to the assistant district attorney on October 7 with the announced intention of filing it operated as a waiver of so much of the 180-day period as should be reasonably necessary to secure a judicial resolution of the questions raised by the motion. Counsel for the defendant specifically agreed to a continuance until October 15 for that purpose but did not appear on that date. There is no complaint that the further continuance until November 2 was unreasonable in any respect; nor is there any complaint as to the delay intervening between November 2 and November 8.

In all the circumstances we hold that the defendant waived the benefit of the 180-day provision of art. III(*a*) of the Agreement and that there was no error in denying the motion so far as that provision was concerned.

*Judgments affirmed.*