Peter J. PINAUD, Plaintiff,

v.

COUNTY OF SUFFOLK, a municipal entity, James Catterson, in his official capacity as District Attorney of the County of Suffolk, Patrick Henry, David Freundlich, John Holownia, Kevin Fitzgerald, Patrick J. O'Connell and Mark Cohen, Defendants.

No. CV 91–2205.

United States District Court,
E.D. New York.

June 25, 1992.

Jared J. Scharf, White Plains, N.Y., for plaintiff Peter J. Pinaud.

Robert J. Cimino, Suffolk County Atty. by Arlene Zwilling, Hauppauge, N.Y., for defendant County of Suffolk.

Snitow & Pauley by William H. Pauley, III, New York City, for defendants Catterson, Henry, Holownia, Fitzgerald, O'Connell and Cohen.

Perini & Hoerger by Maureen S. Hoerger, Hauppauge, N.Y., for defendant Freundlich.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above referenced case, Peter J. Pinaud ("plaintiff"), a resident of Florida,

brings suit under 42 U.S.C. § 1983 against current and former Suffolk County Assistant District Attorneys David Freundlich ("Freundlich"), John Holownia ("Holownia"), Kevin Fitzgerald ("Fitzgerald"), Patrick J. O'Connell ("O'Connell") and Mark Cohen ("Cohen") (collectively "district attorney defendants"); former and current Suffolk County District Attorneys Patrick Henry ("Henry") and James Catterson; and the County of Suffolk ("County") (collectively "defendants"). Plaintiff alleges that defendants violated his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments through a conspiracy that lasted from August 1983 to November 1988 and that allegedly included the following acts: (1) filing false criminal charges against plaintiff for Possession of Stolen Property in the First Degree in violation of former New York Penal Law § 165.50 ("Possession"); (2) coercing plaintiff to plead guilty to one count of Possession by raising his bail from $10,000 to $250,000; (3) filing false criminal charges of Bail Jumping in the First Degree ("Bail Jumping") against plaintiff and using that as an excuse to violate his plea agreement; (4) making false and misleading statements to the United States Bureau of Prisons (the "Bureau") in order to persuade the Bureau to rescind federal sentencing credit that had been awarded to plaintiff as a result of his having served a state prison term in violation of his plea agreement; (5) improperly arranging plaintiff's transfer from a federal prison to the Suffolk County Jail at Riverhead (the "Riverhead Jail") for state proceedings which never took place; and (6) unnecessarily transporting plaintiff between the Riverhead Jail and the Hauppauge Courthouse on days when his case was not even on the Court calendar in an attempt to coerce him into pleading guilty to the Possession and/or Bail Jumping charges. Plaintiff limits his claims regarding the above-mentioned acts to defendants' out-of-court acts and decisions. Plaintiff also brings related state claims of fraud, false arrest, intentional infliction of emotional distress and prima facie tort.

Now before the Court are defendants' motions to dismiss and for summary judgment pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure. For the reasons stated below, defendants' motions are granted in part and denied in part.

## I. BACKGROUND

The following material facts are derived from plaintiff's amended complaint. On May 28, 1982, federal agents, pursuant to a proper search warrant, searched plaintiff's residence and found evidence proving that he had committed federal tax crimes. However, plaintiff was not indicted on those charges until February 6, 1985.

In 1983, plaintiff was working for an automobile body shop which adjoined an automobile salvage yard. Pursuant to section 415-a of the New York Vehicle and Traffic Law, Suffolk County Police searched the salvage yard without a warrant and found stolen cars and car parts. As a result of this investigation, in August 1983, plaintiff was indicted by a Suffolk County Grand Jury and charged with three counts of Possession as well as nine lesser offenses.

Plaintiff filed a motion to suppress the evidence obtained as a result of the warrantless search and a hearing on that motion was held in April 1984. Plaintiff alleges that as a result of a decision in the case of *People v. Pace*, 101 A.D.2d 336, 475 N.Y.S.2d 443 (2d Dep't 1984), *aff'd*, 65 N.Y.2d 684, 491 N.Y.S.2d 618, 481 N.E.2d 250 (Ct.App.1985), decided after plaintiff's suppression hearing was held but before a decision was rendered, it appeared that evidence against plaintiff would be suppressed and the strength of the case against him would be substantially weakened. Consequently, in early May, 1984, the District Attorney's Office asked plaintiff to plead guilty to one count of Possession and plaintiff refused.

Plaintiff alleges that as a direct result of this refusal, on May 3, 1984, O'Connell, Freundlich and Henry made an out-of-court decision that O'Connell would go to court and, on the basis of information that had long been known to them, request that plaintiff's bail be raised from $10,000 to

$250,000. The Supreme Court, Suffolk County granted the application for a bail increase and plaintiff was incarcerated at the Suffolk County Jail between May 3, 1984 and May 7, 1984 because he could not raise the additional bail.

Under these circumstances, on May 7, 1984, plaintiff pled guilty to one count of Possession under the following plea agreement: (1) he would be sentenced either to a term of one to three years or to a term of one and one half to four years; (2) sentencing by the Suffolk County Court would be delayed six months so that plaintiff would first be sentenced by the United States District Court for the Eastern District of New York on the anticipated federal, tax-related charges; (3) plaintiff's state sentence would run concurrent with the anticipated federal sentence; (4) plaintiff would serve his time in a federal prison; and (5) plaintiff's bail would immediately be reduced to $10,000 so that he could be released from jail.

Pursuant to the above-described plea agreement, on May 7, 1984, the Suffolk County Court directed plaintiff to return to court for sentencing on November 7, 1984 and specifically stated that he need not appear for a pre-sentencing hearing scheduled for June 15, 1984. However, by a letter that was apparently sent to plaintiff in mid-May 1984, the Suffolk County Court directed plaintiff to appear at the June 15, 1984 hearing. When plaintiff failed to make that appearance, O'Connell (allegedly pursuant to an out-of-court decision made by Henry, Freundlich and O'Connell) obtained an indictment against plaintiff from a Suffolk County Grand Jury on the charge of Bail Jumping. The Grand Jury was not apprised of the May 7, 1984 Order which stated that plaintiff need not return to court before November 7, 1984.

On October 16, 1984, plaintiff was arrested for Bail Jumping. The following day, the Suffolk County Court dismissed that charge but also revoked plaintiff's plea agreement, sentenced him to two and one-third to seven years on the Possession charge, and immediately remanded him to state prison.

On October 31, 1984, plaintiff was indicted in the Northern District of New York on four counts of filing false claims for income tax refunds. On January 14, 1985, he entered a plea of guilty to two tax counts and on March 13, 1985, he was sentenced to two concurrent terms of forty-four months each, consecutive to the state sentence.

On February 6, 1985, plaintiff was indicted in the Eastern District of New York on sixteen tax counts. On May 9, 1985, he pled guilty to two counts and on July 30, 1985, he was sentenced to two concurrent terms of three years each, to run consecutive to the state sentence and consecutive to the Northern District sentence.

In January 1985, plaintiff, then a state prisoner, was transferred to federal custody where he remained until October 1985. During that time, plaintiff alleges that he believed he was receiving federal credit for his state sentence.

In March of 1986, plaintiff filed a motion in Suffolk County Court seeking to vacate his state sentence on the ground that the plea agreement had been violated. The motion was denied in August 1986. However, on July 6, 1987, the Appellate Division reversed that decision and vacated the conviction. *People v. Pinaud*, 132 A.D.2d 580, 517 N.Y.S.2d 560 (2d Dep't 1987). Unfortunately, by February 6, 1987, plaintiff had already completed serving his entire state sentence and was therefore transferred to the Federal Correction Institute at Otisville, New York ("Otisville") to begin serving his federal terms.

Plaintiff requested that the warden at Otisville grant him credit toward his federal sentences for the 828 days that he had spent serving his subsequently vacated state sentence which had delayed the commencement of his federal sentences. On August 26, 1987, the warden granted plaintiff the credit he requested.

Subsequently, however, the Bureau of Prisons rescinded the credit, allegedly due, in part, to a conversation between Cohen and the Bureau on September 11, 1987, in which Cohen falsely stated that the district attorney's office was appealing the Appellate Division decision in *People v. Pinaud*.

In fact, the district attorney's office had merely applied for leave to appeal to the Court of Appeals. Such leave was subsequently denied on October 20, 1987. *People v. Pinaud*, 70 N.Y.2d 802, 522 N.Y.S.2d 120, 516 N.E.2d 1233 (Ct.App.1987).

On October 27, 1987, plaintiff filed a writ of habeas corpus in the United States District Court for the Southern District of New York claiming that under applicable case law he was entitled to receive credit toward his federal sentences for the time he served on the vacated state sentence. On November 2, 1987, the District Court dismissed his petition and that dismissal was subsequently affirmed by the Second Circuit in at 2–1 decision. *Pinaud v. James*, 851 F.2d 27 (2d Cir.1988).

In February 1988, plaintiff was transferred from Otisville to the Allenwood Federal Prison Camp ("Allenwood"), where his movements were much less restricted. At that time, however, O'Connell, pursuant to the Appellate Division Order of July 6, 1987, determined to proceed in the Suffolk County Court with further proceedings regarding plaintiff's vacated sentence. O'Connell then began to arrange to have plaintiff transferred from Allenwood to the Riverhead Jail so that he could make appearances in the Suffolk County Court.

Plaintiff contends that it was not necessary for him to make any appearances in the Suffolk County Court unless that court were to deny his three pending motions to dismiss the indictments on the Possession and Bail Jumping charges. Moreover, because plaintiff preferred to remain in Allenwood, his counsel arranged with O'Connell to allow him to remain at Allenwood as long as his motions were not decided.

Thereafter, plaintiff alleges that Henry and Holownia, in order to harass plaintiff into pleading guilty to the vacated charges, removed O'Connell from the case, assigned it to A.D.A. Glenn Gruder, and ordered him to arrange to have plaintiff transferred to the Riverhead Jail. However, plaintiff's counsel contacted Gruder and he agreed that a transfer was not required at that time.

Thereafter, Henry and Holownia replaced Gruder with A.D.A. William Condon, who was also ordered to arrange to have plaintiff transferred to the Riverhead Jail. Plaintiff's counsel explained the situation to Condon and he too agreed that a transfer was not required at that time.

Thereafter, during the summer of 1988, Holownia replaced Condon with Fitzgerald and ordered him to arrange to have plaintiff transferred to the Riverhead Jail. Yet again, plaintiff's counsel explained the situation and Fitzgerald too agreed that a transfer was not required at that time. Nevertheless, on unusually short notice, Fitzgerald subsequently arranged for such a transfer.

While plaintiff was in the Riverhead Jail in September and October 1988, his case was not on the Suffolk County Court calendar. Nevertheless, Henry and Holownia allegedly arranged to have plaintiff frequently transported by bus, in chains, from the Riverhead Jail to the Hauppauge Courthouse where he was kept in damp, overcrowded holding cells. This practice, known as "Bullpen Therapy," was allegedly used by unscrupulous prosecutors to coerce defendants to plead guilty.

By Order dated October 19, 1988, the Suffolk County Court granted two of plaintiff's motions to dismiss, and the Possession and Bail Jumping charges were dismissed "in the interest of justice" pursuant to CPL § 210.40.

Plaintiff was held in the Riverhead Jail for three more weeks before he was returned to Allenwood. He was released from Allenwood on February 22, 1989.

On March 16, 1990, plaintiff filed a claim in the New York State Court of Claims, pursuant to the Court of Claims Act, seeking relief as a person who had been wrongfully imprisoned. On October 12, 1990, his claim was denied because the vacatur of the conviction by the Appellate Division on July 6, 1987 and the subsequent dismissal of the charges by the County Court on October 19, 1988, were not based on the grounds enumerated in the Court of Claims Act.

Plaintiff commenced the instant action by filing a complaint on June 17, 1991.

## II. DISCUSSION

Although the defendants deny the substantive allegations in plaintiff's amended complaint, such allegations are accepted as true for the purposes of this motion. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). At this time, defendants raise four main defenses: (1) absolute immunity for acts undertaken by the district attorney defendants within the scope of their prosecutorial duties; (2) statute of limitations; (3) failure to satisfy all the elements for a claim based on malicious prosecution; and (4) failure to file a notice of claim against the County.

## A. ABSOLUTE IMMUNITY

In order to assure "the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system," *Imbler v. Pachtman*, 424 U.S. 409, 427–28, 96 S.Ct. 984, 993–94, 47 L.Ed.2d 128 (1976), prosecutors are entitled to absolute immunity to § 1983 claims for their prosecutorial activities that are "intimately associated with the judicial phase of the criminal process...." *Id.* at 430, 96 S.Ct. at 995. Moreover, when the actions of a prosecutor are subject to absolute immunity, a supervising prosecuting attorney is also covered by that immunity. *Buckley v. Fitzsimmons*, 952 F.2d 965, 966 (7th Cir.1992); *Haynesworth v. Miller*, 820 F.2d 1245, 1269 (D.C.Cir.1987).

Courts use a functional analysis test to determine whether absolute immunity applies to a particular activity of a prosecutor. *See Burns v. Reed*, —— U.S. ——, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991); *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.1981); *Barrett v. United States*, 798 F.2d 565, 573 (2d Cir.1986). Moreover, the Second Circuit has held that the bounds of a prosecutor's absolute immunity are not to be narrowly construed. *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir.1987) ("unless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process"). Furthermore, when prosecutors' acts are covered by absolute immunity, the motives behind those acts are not subject to judicial scrutiny. *Robison v. Via*, 821 F.2d 913, 918 (2d Cir.1987); *see Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir.1989).

Plaintiff alleges six distinct acts, taken by one or more of the district attorney defendants, which caused his injuries: (1) defendants improperly sought to increase plaintiff's bail; (2) defendants misled the Grand Jury to obtain an indictment against plaintiff for Bail Jumping; (3) defendants breached their plea agreement with plaintiff; (4) defendants misrepresented the status of plaintiff's state prosecution to the Bureau of Prisons; (5) defendants arranged to transfer plaintiff from Allenwood to the Riverhead Jail and (6) defendants arranged to have plaintiff frequently transported by bus, in chains, from the Riverhead Jail to the Hauppauge Courthouse on days that his case was not on the court calendar. Defendants, however, contend that the first five of these alleged acts are covered by absolute immunity.

### 1. The Application to Increase Plaintiff's Bail

Plaintiff alleges that certain of the district attorney defendants made an out-of-court determination to raise his bail on the Possession charges from $10,000 to $250,000 for the sole purpose of coercing him into pleading guilty to one count of Possession. New York Criminal Procedure Law expressly provides for the district attorney's involvement in a determination to order bail or a subsequent review of a bail order. *See* CPL § 530.40(4) ("a superior court may not order ... bail when the defendant is charged with a felony unless and until the District Attorney has had an opportunity to be heard in the matter").

The Second Circuit has not addressed whether prosecutorial immunity applies to bail applications. However, other circuits have held that "seeking a particular bail amount [is] part of [the] 'initiation and pre-

sentation' of a prosecution within the meaning of *Imbler.*" *Lerwill v. Joslin,* 712 F.2d 435, 438 (10th Cir.1983); *see Burns v. County of King,* 883 F.2d 819, 822–23 (9th Cir.1989); *Myers v. Morris,* 810 F.2d 1437, 1446 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). Therefore, this Court finds that the district attorney defendants have absolute immunity to plaintiff's claim based on the application to increase his bail.

### 2. *Presentation to the Grand Jury*

■ Plaintiff alleges that certain of the district attorney defendants presented false information to the Suffolk County Grand Jury regarding the Bail Jumping charge and also withheld mitigating evidence from it. New York Criminal Procedure Law authorizes the district attorney to call witnesses and present evidence to the grand jury and designates him as the Grand Jury's legal advisor. CPL §§ 190.-25(6), 190.30(6), 190.50(2), 190.55(2).

The Second Circuit has routinely held that "[t]he presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity under *Imbler.*" *Maglione v. Briggs,* 748 F.2d 116, 118 (2d Cir.1984); *see Fields v. Soloff,* 920 F.2d 1114, 1120 (2d Cir.1990) ("subjecting prosecutors to liability for their conduct before grand juries raises the same policy concerns upon which absolute immunity for trial-related activities is founded"); *Baez v. Hennessy,* 853 F.2d 73, 75 (2d Cir.1988), *cert. denied,* 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989); *Powers v. Coe,* 728 F.2d 97, 104 (2d Cir.1984). Consequently, the district attorney defendants are immune to plaintiff's charge of misconduct before the grand jury.

### 3. *Abrogation of Plaintiff's Plea Agreement*

■ Plaintiff alleges that he entered a plea agreement based on O'Connell's repre-

sentations concerning the term and location of his imprisonment and that the district attorney defendants breached that agreement.

In *Taylor,* the plaintiff charged that the prosecutor lied to him during plea negotiations and reneged on a promise not to recommend a sentence. The Appellate Division of the New York State Supreme Court subsequently directed that the plaintiff be resentenced because of the prosecutor's failure to honor that promise. Nevertheless, the Second Circuit affirmed the dismissal of the plaintiff's § 1983 claim, holding that a prosecutor's "conduct in the plea bargaining negotiations and the sentencing proceeding in state court is protected by the doctrine of absolute prosecutorial immunity." *Taylor,* 640 F.2d at 451–52; *see Coe,* 728 F.2d at 103–04 ("[t]he alleged breach of the agreement not to prosecute, while not technically a plea bargain which would render the prosecutor's immunity absolute ... is so closely analogous to a plea bargain that we think the same principle of absolute immunity appl[ies]").

Although the Appellate Division in the instant case vacated plaintiff's sentence and remanded the matter for further proceedings, the district attorney defendants are entitled to absolute immunity regarding plaintiff's claims arising from the breach of the plea agreement.[1]

### 4. *Communication With the Bureau of Prisons*

Plaintiff alleges that Cohen violated his civil rights by fraudulently telling the Bureau of Prisons that the District Attorney's Office was appealing the Appellate Division order vacating plaintiff's sentence.

In *Allen v. Thompson,* 815 F.2d 1433 (11th Cir.1987), the Eleventh Circuit dismissed a complaint alleging that a federal prosecutor "maliciously wrote a letter to the Bureau of Prisons and the Parole Commission, falsely advising that [plaintiff]

---

**1.** Furthermore, contrary to his claim that the district attorney defendants breached the plea agreement, plaintiff alleges that *"the County Court unilaterally revoked* its promise to sentence plaintiff to a term of imprisonment of one

to three years," Am.Compl. para. 38 (emphasis added), and that *"[t]he County Court also violated the plea agreement ...* by remanding plaintiff to state prison to begin his sentence immediately." Am.Compl. para. 39 (emphasis added).

was guilty of additional drug trafficking for which he had not been charged nor convicted." *Id.* at 1434. The court deemed the prosecutor's response to an inquiry from the Parole Commission to be analogous to a probation officer's preparation of a presentence report. The Eleventh Circuit had previously held that the latter activity is shielded by absolute immunity. *See Hughes v. Chesser,* 731 F.2d 1489, 1490 (11th Cir.1984). Applying that precedent, the court found that the prosecutor's letter to the Parole Commission and the Bureau of Prisons constituted a "continuation of the sentencing process" and was an activity "so intimately associated with the judicial phase of the criminal process as to cloak the prosecutors with absolute immunity from suits for damages." *Allen,* 815 F.2d at 1434.

■ The Second Circuit has not addressed whether a prosecutor's communications with the Bureau of Prisons are entitled to absolute immunity. However, it has held that probation officers are immune to § 1983 claims arising from the preparation of a presentence report. *Dorman v. Higgins,* 821 F.2d 133, 137 (2d Cir.1987) (preparation of presentence reports is "one of the most critical phases of the judicial process"), and it has also immunized prosecutors for their participation in a sentencing proceeding. *See Taylor,* 640 F.2d at 451–52. Consequently, this Court finds that a prosecutor's response to an inquiry from the Bureau of Prisons which directly relates to the sentence to be served is a prosecutorial function entitled to absolute immunity.

■ Furthermore, plaintiff had no constitutional or statutory right to receive credit against his federal sentences for the time he served on his state sentence. *Pinaud v. James,* 851 F.2d at 31 ("even state prisoners whose state sentences have been vacated have been held not entitled to credit on unrelated federal sentences"). Since the recision of the credit for Pinaud's state imprisonment did not violate a constitutional right, Pinaud cannot rely on that recision to state a claim under § 1983. *See Siegert*

*v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991).

5. *The Transfer from Federal to State Prison*

■ Plaintiff alleges that the district attorney defendants violated his rights by obtaining his transfer from Allenwood to the Riverhead Jail. New York Criminal Procedure Law authorizes the district attorney to request that a prisoner in federal custody be delivered to state court for the purposes of a New York prosecution. CPL § 580.30(2); *see generally Ponzi v. Fessenden,* 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922). The district attorney's exercise of this authority is therefore a prosecutorial function.

When the Appellate Division vacated the judgment imposed against plaintiff in October 1984, it did not dismiss the indictments, but remanded the matter for further proceedings in the County Court. *People v. Pinaud,* 517 N.Y.S.2d at 561. The existence of a pending state prosecution satisfies the principal condition for the district attorney to request a transfer under CPL § 580.30.

■ In addition, plaintiff's transfer from federal to state prison did not violate his liberty interests under the Fourteenth Amendment. *See Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State"); *Ruark v. Solano,* 928 F.2d 947, 949 (10th Cir.1991) (transfer from federal to state facility); *Johnson v. Moore,* 926 F.2d 921, 923 (9th Cir.1991) (same); *Cofone v. Manson,* 594 F.2d 934 (2d Cir.1979) (transfer from state to federal facility). Therefore, plaintiff's transfer pursuant to CPL § 580.30 provides no basis for alleging a constitutional deprivation. *See Lopez v. Levi,* 422 F.Supp. 846, 849 (S.D.N.Y.1976). Consequently, that transfer does not sustain a claim under § 1983. *See Siegert,* 111 S.Ct. at 1789.

#### 6. *Absolute Immunity Applies to Injuries Arising from the Prosecution*

 Finally, plaintiff's alleged injuries emanate from the duration and conditions of his imprisonment and therefore arise directly from his prosecution. Plaintiff may not recover under § 1983 from the district attorney defendants for such injuries.

> [A] prosecutor is immune from a suit to recover for an injury arising solely from the prosecution itself—e.g., being compelled to stand trial or to suffer imprisonment or pretrial detention. Such harm must always result in substantial part from the protected prosecutorial activities of initiating prosecution or presenting the State's case.

*Lee v. Willins,* 617 F.2d 320, 322 (2d Cir.), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *see Taylor,* 640 F.2d at 453.

#### 7. *Impact of Burns v. Reed and Cooney v. White*

Plaintiff does not dispute that *Imbler* and its progeny confer absolute immunity on the district attorney defendants for acts they perform in court as part of their prosecutorial function. He contends, however, that *Burns v. Reed,* when considered in conjunction with *Cooney v. White,* —— U.S. ——, 111 S.Ct. 2820, 115 L.Ed.2d 965 (1991), indicates that the Supreme Court intends to limit prosecutorial immunity only to acts that take place in court. Therefore, because plaintiff in the instant action has limited his claims against the district attorney defendants solely to acts and decisions that they allegedly made outside the court, plaintiff contends that the district attorney defendants are not entitled to absolute immunity.

In *Burns,* the majority held that a prosecutor is absolutely immune for statements made to the court during a probable cause hearing but not for legal advice that he gave to police officers handling an investigation. Plaintiff, however, ignores the majority opinion and relies instead on Justice Scalia's *dissent* opposing the granting of absolute immunity and on plaintiff's own interpretation of the reasons behind the Supreme Court's vacatur and remand

(without any analysis or comment) of another absolute immunity case eleven days later "for further consideration in the light of *Burns v. Reed.*" *Cooney,* 111 S.Ct. at 2820. With that nebulous authority, plaintiff surmises that the Supreme Court intends to deny absolute immunity to prosecutors who make out-of-court decisions to fulfill prosecutorial functions.

In *Buckley,* another absolute immunity case that was remanded by the Supreme Court for consideration in light of *Burns,* the plaintiff made an argument similar to the one made by plaintiff in the instant case. The Seventh Circuit gave it short shrift, stating:

> It would be a hoax to proclaim immunity for presentation of testimony in court if the person aggrieved by that testimony may attack its preparation. Immunity is not limited to *un* prepared events at trial! Allowing evasion through litigation about preparation for trial would make no more sense than undermining judicial immunity by entertaining a suit against the law clerk who participated in the preparation of the opinion.

*Buckley,* 952 F.2d at 966.

Similarly, this Court finds plaintiff's interpretation of *Burns* and *Cooney* to be, at best, highly speculative and almost certainly incorrect. It simply makes no sense under *Imbler* and *Reed* to deny absolute immunity to prosecutors for their out-of-court decisions that lead to acts which they perform as part of their prosecutorial function.

 Accordingly, this Court finds that the district attorney defendants are covered by absolute immunity for all their alleged acts that plaintiff claims caused him injury except as to the allegation that defendants Henry and Holownia arranged to have plaintiff frequently transported from the Riverhead Jail to the Hauppauge Courthouse on days that his case was not on the court calendar.

### B. STATUTE OF LIMITATIONS

#### 1. *Claims Pursuant to 42 U.S.C. § 1983*

 The applicable statute of limitations as to § 1983 claims is three years.

*Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989). Moreover, New York's provisions for tolling a limitations period also apply to § 1983 claims, *see Board of Regents, University of New York v. Tomanio,* 446 U.S. 478, 486, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980), and imprisonment does not act as a toll. *See* N.Y. Civil Rights Law § 79(2); *Lee v. Port Authority of New York/New Jersey,* 487 F.Supp. 88, 91 (S.D.N.Y.1980).

Federal law governs when a § 1983 claim accrues. *Pauk v. Board of Trustees,* 654 F.2d 856, 865 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). A § 1983 claim "accrues when the plaintiff 'knows or has reason to know' of the injury that is the basis of his action." *Pauk,* 654 F.2d at 859. Therefore, plaintiff's § 1983 claims accrued when he learned of the injury caused by defendants' alleged misconduct. *See Mack v. Varelas,* 835 F.2d 995, 999–1000 (2d Cir.1987); *Singleton,* 632 F.2d at 191.

Plaintiff filed his original complaint on June 17, 1991. All the alleged acts by the district attorney defendants, other than those acts related to plaintiff's transfer from Allenwood to the Riverhead Jail, occurred between August 1983 and September 1987, and are therefore, on their face, beyond the three year statutory period. Plaintiff, however, asserts that until certain of the district attorney defendants undertook those acts related to his transfer to the Riverhead Jail in the summer of 1988, he never understood that all the district attorney defendants' earlier acts were part of an ongoing conspiracy.

Relying on *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1480 (9th Cir.1989), plaintiff apparently contends that defendants' acts represent a continuing violation, and therefore his claim can properly include their earlier related acts that would otherwise be time-barred. In *Green,* however, the court held that a continuing violation did not exist because the alleged acts were not sufficiently related. *Id.* Moreover, continuing violation arguments are not favored by courts in the Second Circuit and the concept will be applied only under " 'compelling circumstances.' " *See Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y.1989) (citation omitted). To the extent that a continuing violation theory is applicable to the instant case, this Court finds that the acts alleged here are not sufficiently related to constitute a continuing violation.

Plaintiff also argues that because he was not aware of the alleged conspiracy to violate his civil rights prior to the summer of 1988, his claim alleging such a conspiracy should not accrue until that time. However, plaintiff fails to plead specific facts in support of his claim of conspiracy; he merely states that the various "out-of-court" decisions allegedly made by the district attorney defendants are sufficient to allow the inference of a conspiracy. Such conclusory allegations of conspiracy are insufficient to sustain a complaint. *See Zemsky v. New York,* 821 F.2d 148, 151 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987); *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983).

Furthermore, in *Singleton,* the Second Circuit rejected a similar attempt to defeat the bar imposed by the statute of limitations by pleading that separate acts were part of a continuing conspiracy.

> Characterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy ... does not postpone accrual of claims based on individual wrongful acts. The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.

> To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the

purpose of the time-bar, which is to preclude the resuscitation of stale claims. *Singleton,* 632 F.2d at 192.

The district attorney defendants contend that plaintiff's claims as to their efforts to transfer him from Allenwood to the Riverhead Jail are similarly barred because plaintiff was aware of those efforts as of early 1988. However, plaintiff was not actually transferred to the Riverhead Jail until August 1988. Therefore, he could not have received any injury related to such a transfer prior to that time and his claims related to that transfer are timely.

Accordingly, plaintiff is time-barred from relying on any of defendants' alleged acts that occurred prior to June 17, 1988.

### 2. *State Claims*

■ Plaintiff makes state claims based on false arrest, intentional infliction of emotional distress, prima facie tort, and fraud. Under New York law, the statute of limitations on a claim for false arrest is one year, CPLR § 215(3), and the claim accrues when the party is released from prison. In the instant case, plaintiff was released from state custody on February 6, 1987. Accordingly, his state claim as to false arrest was time-barred by February 7, 1987.[2]

■ The New York statute of limitations for intentional infliction of emotional distress is also one year. *See Jemison v. Crichlow,* 139 A.D.2d 332, 531 N.Y.S.2d 919 (2d Dep't 1988) (applying CPLR § 215(3)), *aff'd,* 73 N.Y.2d 868, 537 N.Y.S.2d 487, 534 N.E.2d 325 (Ct.App. 1989). Because that claim must have accrued, at the latest, by November 1989, when plaintiff was returned to federal custody, it too is time-barred.

■ The New York statute of limitations for prima facie tort is three years and for fraud it is six years. *Schlotthauer v. Sanders,* 153 A.D.2d 731, 545 N.Y.S.2d 197 (2d Dep't 1989), *appeal denied,* 75 N.Y.2d 709, 555 N.Y.S.2d 691, 554 N.E.2d 1279

(Ct.App.1990); CPLR §§ 213(8), 214(4). To the extent that the claim for prima facie tort is based on acts occurring after June 1988 and to the extent that the fraud claim is based on acts occurring after June 1985, they are not time-barred.

## C. MALICIOUS PROSECUTION CLAIM

■ Plaintiff alleges a § 1983 claim based on malicious prosecution. The parties agree that such a claim accrues on the date the prosecution is terminated, *see Singleton,* 632 F.2d at 189, in this case on October 19, 1988, and is therefore timely.

The elements of a § 1983 claim based on malicious criminal prosecution and the state law claim for such a tort are the same:

(1) the defendant either commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding terminated in the plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice.

*Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989) (citations omitted); *see also Conway v. Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984). Defendants contend that plaintiff fails to satisfy the second element because the charges against him were dismissed pursuant to New York Criminal Procedure Law § 210.40 "in the interest of justice."

In *Singleton,* the Second Circuit held that in order to state a § 1983 claim for deprivation of civil rights through malicious prosecution plaintiff "must alleg[e] and prov[e] that the prosecution terminated in some manner indicating that the person was not guilty of the offense charged." *Singleton,* 632 F.2d at 195. Moreover, in *Hickland v. Endee,* 574 F.Supp. 770, 779 (N.D.N.Y.1983), *aff'd* 732 F.2d 142 (2d Cir. 1984), the court held that a dismissal in the interest of justice does not constitute a favorable termination. *Id.* at 779; *see Dorak v. County of Nassau,* 329 F.Supp. 497, 503 (E.D.N.Y.1970) (dismissal in the inter-

---

**2.** The fact that plaintiff was then imprisoned on unrelated federal charges is irrelevant. In any event, the false arrest claim would be time-barred even if it accrued when he was released from federal prison in February 1989.

est of justice as a matter of judicial discretion will not support claim for malicious prosecution), *aff'd,* 445 F.2d 1023 (2d Cir. 1971); *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 829, 467 N.E.2d 487 (Ct.App.1984), ("dismissal 'in the interest of justice' [pursuant to CPL § 210.40] is neither an acquittal of the charges nor any determination of the merits. Rather, it leaves the question of guilt or innocence unanswered"); *MacLeay v. Arden Hill Hospital,* 164 A.D.2d 228, 563 N.Y.S.2d 333 (3rd Dep't 1990) (dismissal in the interest of justice pursuant to CPL § 170.40 does not sustain a malicious prosecution claim), *appeal denied,* 77 N.Y.2d 806, 568 N.Y.S.2d 913, 571 N.E.2d 83 (1991); *Miller v. Star,* 123 A.D.2d 750, 507 N.Y.S.2d 223 (2d Dep't 1986) (same).

Plaintiff states that he based his motion to dismiss the charges against him on all ten subsections of CPL § 210.40(1), including subsection 210.40(1)(c), which relates to evidence of guilt, and that the court dismissed the possession charge on "the totality of the circumstances." He argues that this dismissal is an indication of innocence and a favorable termination. Similarly, he argues that the dismissal of the Bail Jumping charge due to defendants' failure to present exculpatory evidence to the Grand Jury is also indicative of innocence and a favorable termination.

In its Order of October 19, 1988, the Suffolk County Court dismissed both the Bail Jumping charge and the Possession charge against plaintiff. The court stated:

> With regard to the bail jumping charge ... the grand jury was not provided with a transcript of the May 7, 1984 minutes in which the Court stated that defendant need not appear on June 15. This clearly supports Pinaud's claim that he believed that he need not appear until the scheduled sentence date, which was to be on November 7, 1984.

> While a district attorney is not mandated to present exculpatory evidence to every grand jury, he must, *in the interests of justice,* present such where it would amount to an "exculpatory and mitigating defense" and so charge with

respect thereto—especially where, as here, it might reasonably be expected to lead the grand jury not to indict." (citations omitted).

\* \* \*

With regard to the remaining charges, it is clear to this Court that not only was it unable to carry out its original plea bargain, but also that defendant has served a sufficient amount of time in jail which would have more than covered that agreement.

This is clearly one of those rare and compelling cases where the public interest and the interests of the accused coincide and permit an exercise of forbearance. (citation omitted).

The defendant has clearly established from the totality of the circumstances that he has met the requirements of CPL 210.40 necessary to invoke the *judicial discretion* requested in this motion. Justice will best be served by dismissing the charges.

*People v. Pinaud,* Supreme Court, Suffolk County, Ind. Nos. 2030/83; 1811/84 (October 19, 1988) (emphasis added).

In addition, this Court notes that plaintiff pled guilty to the Possession charge; his attorney admitted in open court that he had received the letter which directed plaintiff's appearance in court on June 15, 1984; and plaintiff admitted that "[t]he letter led me to believe I was going to jail in July, which would take away the "currency" (sic) of my sentence, and that's why I was spooked and scared, and I didn't know what to do." *People v. Pinaud,* Minutes of October 16, 1984 Hearing at pp. 15–16. Although plaintiff also made various statements to the Suffolk County Court indicating his innocence of the charges against him, under these circumstances, this Court finds that the dismissal of the charges against plaintiff "in the interest of justice" pursuant to CPL § 210.40 was not indicative of his innocence and therefore was not a favorable termination. Accordingly, plaintiff fails to state a cause of action under § 1983 based on malicious prosecution.

## D. NOTICE OF CLAIM

Under New York General Municipal Law § 50–e, service of a notice of claim within ninety days from the accrual of a cause of action founded on tort is a condition precedent to a lawsuit against the County. Section 50–e is applicable to state claims heard in federal court. *Piesco v. New York Dept. of Personnel,* 650 F.Supp. 896 (S.D.N.Y.1987). Plaintiff's complaint alleges that defendants' wrongdoing occurred between August 1983 and November 1988. Assuming, *arguendo,* that each of plaintiff's state claims accrued in November 1988, plaintiff was required to serve a notice of claim on the County by February 1989.

The County states that plaintiff has never served a notice of claim; plaintiff insists that a notice of claim was filed on July 7, 1989. In any event, the notice of claim is at least five months late and plaintiff has offered no excuse for such lateness.

Plaintiff contends that even if his did fail to timely file a notice of claim, that should not affect his fifth claim which sounds in fraud. However, in *Orsell v. Board of Education,* 23 A.D.2d 703, 256 N.Y.S.2d 970, 971 (3d Dep't 1965) the sole issue before the court was whether the plaintiff's timely notice of claim constituted proper notice of his fraud claim. Consequently, this Court finds that all of plaintiff's state claims against the County must be dismissed for failure to timely file a notice of claim.

## III. CONCLUSION

Accordingly, for the aforementioned reasons, defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted in full as to defendants Freundlich, O'Connell and Cohen. As to the remaining individual defendants, summary judgment is granted as to all their alleged acts other than those which allegedly took place while plaintiff was at the Riverhead Jail in September and October of 1988.

As the acts upon which plaintiff's fraud claim is based are among those that are barred, defendants' motion for summary

judgment is also granted as to that claim. Furthermore, plaintiff's claims for intentional infliction of emotional distress and false arrest are dismissed as time-barred and all state claims are dismissed as to the County due to plaintiff's failure to timely file a notice of claim.

Defendants' motion for summary judgment is denied as to plaintiff's § 1983 claim and the district attorney defendants' motion for summary judgment is denied as to plaintiff's state claim for prima facie tort, but only to the extent that these claims are based on defendants' acts subsequent to June 17, 1988 and, as to the district attorney defendants, to the extent that their acts are not protected by absolute immunity.

SO ORDERED.