Terence BODIE, Plaintiff,

v.

Robert M. MORGENTHAU, District Attorney, New York County, James M. Kindler, Chief Assistant District Attorney, New York County, Ann Donnelly, Assistant District Attorney, New York County, Donna Dodds, Associate General Counsel, The City of New York, Department of Probation, Brion D. Travis, Chairman of the New York State Division of Parole, Glenn S. Goord, Commissioner of the Department of Correction Services, New York County Department of Probation, Defendants.

No. 02 Civ. 7697(PKC).

United States District Court, S.D. New York.

Sept. 23, 2004.

Terence Bodie, Aurthur–Kill Correctional Facility, Staten Island, NY, Pro se.

Michael Symington Morgan, District Attorney, New York County, New York City, for Defendants.

Michael A. Cardozo, Corporation Counsel of City of New York, New York City, for New York County Dept. of Probation.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Plaintiff Terence Boddie[1] filed this action on September 25, 2002, alleging that the defendants, in their official and individual capacities, violated his rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment of the U.S. Constitution. In this action brought under 42 U.S.C. § 1983, the plaintiff, who is *pro se*, challenges both the conditions of his confinement and his continued incarceration in facilities maintained by the New York State Department of Correctional Services ("DOCS"). Defendants move to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., for lack of subject matter jurisdiction and for failing to state a claim.

For the reasons explained below, the motion to dismiss is granted in part and denied in part.

*Background*

Plaintiff is serving six concurrent sentences after jury convictions on four counts of Rape in the First Degree, five counts of Sodomy in the First Degree, and two counts of Sexual Abuse in the First Degree. The New York Appellate Division, First Department, unanimously affirmed his conviction. *People v. Boddie*, 226 A.D.2d 120, 640 N.Y.S.2d 47 (1st Dep't), *appeal denied*, 88 N.Y.2d 980, 672 N.E.2d 613, 649 N.Y.S.2d 387, *adhered to on reconsideration*, 88 N.Y.2d 1067, 674 N.E.2d 341, 651 N.Y.S.2d 411 (1996). Boddie is currently incarcerated and under DOCS supervision. (Complaint ¶ 3)

Since his incarceration, Boddie has filed multiple actions in state and federal court regarding his conviction, including at least two in this District petitioning for a writ of habeas corpus. *See, e.g., Boddie v. New York State Dep't of Correctional Services*, 1997 WL 482036 (S.D.N.Y. Aug. 20, 1997) (dismissing section 1983 complaint); *Boddie v. Brunelle*, 1997 WL 626407 (W.D.N.Y. Sept.19, 1997) (dismissing section 1983 action on summary judgment); *Boddie v. Goord*, 251 A.D.2d 799, 674 N.Y.S.2d 466 (3d Dep't), *leave denied*, 92 N.Y.2d 810, 702 N.E.2d 839, 680 N.Y.S.2d 54 (N.Y.1998) (table) (affirming dismissal

---

**1.** Though the caption of this action identifies plaintiff as Terence Bodie, his last name is spelled "Boddie" in submissions to this Court. The text of this opinion therefore identifies plaintiff as "Boddie."

of Article 78 complaint); *Boddie v. New York State Division of Parole*, 290 A.D.2d 327, 735 N.Y.S.2d 781 (1st Dep't), *appeal dismissed* 98 N.Y.2d 752, 781 N.E.2d 905, 751 N.Y.S.2d 841 (2002) (dismissing complaint over parole denial); *Boddie v. New York State Division of Parole*, 293 A.D.2d 884, 740 N.Y.S.2d 247 (3d Dep't), *leave denied*, 98 N.Y.2d 606, 774 N.E.2d 222, 746 N.Y.S.2d 457 (table), *appeal dismissed*, 98 N.Y.2d 752, 781 N.E.2d 905, 751 N.Y.S.2d 841 (2002) ("[W]ere we to reach the merits, we would uphold the determination denying petitioner's request for parole.... [T]he Board was persuaded by the heinous nature of petitioner's offenses and the fact that a weapon was involved."); *Boddie v. New York State Division of Parole*, 306 A.D.2d 661, 759 N.Y.S.2d 910 (3d Dep't), *appeal dismissed*, 1 N.Y.3d 551, 807 N.E.2d 881, 775 N.Y.S.2d 770 (2003) (dismissing appeal from Article 78 proceeding that rejected Boddie's application over parole denial); *Boddie v. Goord*, 307 A.D.2d 555, 762 N.Y.S.2d 295 (3d Dep't 2003), *appeal dismissed*, 1 N.Y.3d 589, 808 N.E.2d 352, 776 N.Y.S.2d 217 (2004) (affirming dismissal of Article 78 complaint for lack of administrative exhaustion); *Boddie v. New York State Division of Parole*, 288 F.Supp.2d 431 (S.D.N.Y.2003) (denying petition for writ of habeas corpus challenging Boddie's parole denial); *Boddie v. New York State Division of Parole*, 285 F.Supp.2d 421 (S.D.N.Y.2003) (same); *Boddie v. Edwards*, 97 Civ. 7821(MGC).

For the purposes of this Rule 12 motion, I describe the facts of this case as they are offered by the plaintiff, and accept them as true. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The Complaint provides a lengthy narrative pertaining to Boddie's sentencing and subsequent denials of parole. The purported wrongs of which he complains commenced at the time of his sentencing in 1993, when, he claims, defendant Ann Donnelly, then an assistant district attorney for New York County, failed to submit a memorandum to the trial court detailing her views on Boddie's sentencing. (Complaint ¶ 14) Boddie claims that until 1998, he was unaware that Donnelly placed a "negative recommendation letter" in his institutional parole file.[2] (Complaint ¶¶ 15–17) The Complaint depicts bureaucratic confusion about the letter's existence, until, in 1999, Assistant District Attorney Carmon A. Morales confirmed the letter's existence. (Complaint ¶¶ 18–23) Boddie contends that upon review of this document, he found it factually inaccurate. (Complaint ¶¶ 24–26, 29–30) He believes that the letter contributed to his parole denials in 1998 and 2000. (Complaint ¶ 32) He alleges that the filing of the letter violated his due process and equal protection rights, and that it reflects malice and bias by defendant Donnelly. (Complaint ¶¶ 37–49)

By letter dated November 1, 2000, Boddie raised his concerns to one of Donnelly's supervisors, Robert M. Morgenthau, District Attorney of New York County. (AC ¶ 28) Boddie's letter informed Morgenthau that defendant Donnelly prejudiced him by placing the negative recommendation letter in his file without granting him an opportunity to correct it. (Complaint ¶¶ 29–30) By letter dated June 1, 2002, Boddie wrote Assistant District Attorney James M. Kindler, again asserting that Donnelly's negative letter was inaccurate and prejudiced him in his parole hearings.

---

**2.** Though the letter was unsigned, Donnelly's submissions do not dispute that she was its author.

(Complaint ¶¶ 36–37) Boddie contends that Morgenthau and Kindler violated his Fourteenth Amendment rights by failing to investigate the allegations raised in his letters. (Complaint ¶ 49)

Boddie seeks injunctive relief to compel the removal of the negative recommendation letter from his parole files, and preclusion of its use in parole and sex offender board hearings. (Complaint ¶ 50) He also seeks $ 1,000,000 in damages caused by the letter. (Complaint ¶ 51)

In addition to the negative recommendation letter, Boddie claims that there were inaccuracies in the pre-sentence report, which incorporated remarks suppressed as hearsay at trial. (Complaint ¶¶ 55–62) Boddie wrote letters complaining of the alleged inaccuracies that he found. (Complaint ¶ 57) Donna Dodds, identified in the Complaint only as "Associate Attorney," twice wrote Boddie indicating that she would not amend the pre-sentence report. (Complaint ¶¶ 69–70) He then filed an Article 78 petition challenging the probation department's failure to correct the information in his pre-sentence report. (Complaint ¶ 72) Boddie was granted relief in his Article 78 proceeding by default, prompting an order that the probation department amend the pre-sentence report to ensure the accuracy of all information contained therein. (Complaint ¶ 73) Plaintiff alleges that this order was ignored. (Complaint ¶ 74) At a parole hearing conducted in 2000, officials evaluated Boddie under the unamended pre-sentence report. (Complaint ¶¶ 78–79) By letter dated February 23, 2001, Dodds wrote Boddie stating that the probation department stood by the facts as stated in the pre-sentence report, with the exception of a statement that indicated Boddie admitted his guilt, which was deleted. (Complaint ¶ 81) Boddie alleges that the Department of Proba-

tion had an affirmative duty under 9 N.Y.C.R.R. § 350.6 and the Fourteenth Amendment to ensure the pre-sentence report's accuracy, and argues that the report's errors led to his parole denial. (Complaint ¶¶ 85, 87–88) He claims that Dodds and the Department of Probation are liable for these errors, and seeks an injunction ordering the pre-sentence report's withdrawal and correction, along with $1,000,000 in damages. (Complaint ¶¶ 89–94)

In a letter dated November 9, 1998, Boddie wrote Brion D. Travis, chairman of the Division of Parole, to point out factual errors in the pre-sentence report, and received no response. (Complaint ¶¶ 96–99) On November 18, 1999, Boddie received a document from the New York State Division of Parole that, he states, confirmed his suspicions that the parole board based previous decisions on erroneous information. (Complaint ¶¶ 103–05, 107, 110–12) In naming Travis as a defendant, he seeks injunctive relief mandating that the New York State Division of Parole (1) correct information in his parole files, (2) be barred from using the pre-sentence report to prepare parole summaries until all errors are corrected, (3) be barred from using the negative recommendation letter, and (4) utilize accurate records in future parole hearings. (Complaint ¶¶ 117–120)

Plaintiff next claims that the negative recommendation letter and the pre-sentence report affected his participation in the sexual offender program, as well as his security classification, transfers, conditional release date, and good-time credits. (Complaint ¶¶ 95, 121) In April 2002, Boddie was transferred to the Gowanda Correctional Facility to participate in a mandatory sexual offender program.[3] (Complaint ¶ 123) Under threat of losing

---

**3.** Plaintiff has since been transferred to Arthur Kill Correctional Facility. (Letter, Ter-

ence Boddie to Hon. Debra C. Freeman, Feb. 19, 2003)

good time and conditional release credits, Boddie signed a waiver that could make public all "Homework" and program evaluations arising from his sex offender program. (Complaint ¶¶ 124–25) Plaintiff filed a grievance, which, he states, prompted a "Bogus" grievance hearing. (Complaint ¶ 126) The Complaint states that the grievance was denied, appealed to the facility superintendent, and ultimately appealed to the Central Office Review Committee ("CORC"). (Complaint ¶¶ 126–29)

On May 15, 2002, Boddie sent a letter of complaint to DOCS Commissioner Glenn S. Goord seeking to correct information in his security assessment summary. (Complaint ¶ 135) He sent a second letter to Goord on May 25, 2002, which pertained to Vera's misunderstanding of Boddie's crimes. (Complaint ¶ 138) In a letter dated June 11, 2002, Theresa A. Knapp–David responded to Boddie's letters, and indicated that his complaints should be addressed to his assigned counselor. (Complaint ¶¶ 140–41) Plaintiff sent yet another letter to Goord, and on June 24, 2002, Deputy Commissioner of Programs Frank R. Headly responded that he was concerned about Boddie's "Ability To Be Honest" and discuss the details of his personal history. (Complaint ¶¶ 142, 146) Knapp–David sent Boddie another letter on July 30, 2002, and reiterated that Boddie should raise his concerns with his assigned counselor. (Complaint ¶ 150)

Plaintiff seeks an injunction requiring that DOCS (1) correct all erroneous information in his files, (2) be barred from relying on the pre-sentence report until it is corrected by the Department of Probation, and (3) be barred from allowing other government agencies access to his institutional files. (Complaint ¶¶ 154–56) Plaintiff seeks $1,000,000 in damages from Goord and DOCS in their individual and official capacities. (Complaint ¶ 157)

The State of New York moves to dismiss claims that Boddie brings against Goord and Travis, the District Attorney of the City of New York moves to dismiss claims brought against Morgenthau, Kindler, and Donnelly, and the City of New York moves to dismiss Boddie's claims against Dodds and the New York City Department of Probation.

*Rule 12   Standard*

In evaluating a motion brought under Rule 12(b)(6), the Court must accept the Complaint's allegations as true and "draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir.1997), *citing Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). "Dismissal is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "'The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir.1996) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quotation marks omitted). "Of course, on a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the complaint alleges sufficient facts which, if true, would permit a reasonable factfinder

to find defendants liable." *Vogt v. Green-marine Holding, LLC,* 318 F.Supp.2d 136, 144 (S.D.N.Y.2004).

*Discussion*

### 1. Plaintiff's Claims Are Not Cognizable Under Section 1983

■ Each of the defendants moves to dismiss this action in full on the grounds that Boddie cannot challenge the denial of parole in a section 1983 action, and instead should have petitioned for a writ of habeas corpus. As the Complaint directly implicates the validity of Boddie's continued incarceration, and because a trilogy of Supreme Court rulings precludes a prisoner from using section 1983 to raise such a claim, Boddie's action is dismissed in substantial part for failure to state a claim under 42 U.S.C. § 1983. I begin by summarizing the Supreme Court's considerations of the criteria that distinguish section 1983 and the habeas corpus statutes.

In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court distinguished the relief available in a section 1983 action from the relief provided by a writ of habeas corpus. The plaintiff was an Indiana state prisoner who brought a section 1983 claim against law enforcement officials, alleging misconduct in his arrest and conviction. *Id.* at 479, 114 S.Ct. 2364. Although the plaintiff brought a damages claim under section 1983 and did not directly challenge the lawfulness of his conviction, his claim should have been brought as a petition for habeas corpus, the Court held. *Id.* at 483, 114 S.Ct. 2364. A section 1983 claim cannot implicate the invalidity of an inmate's conviction or sentence:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demon-

strate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487, 114 S.Ct. 2364 (emphasis in original). The Court emphasized that a plaintiff must allege "actual, compensable injury," one that "does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Id.* at 487 n. 7, 114 S.Ct. 2364 (emphasis in original). "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489–90, 114 S.Ct. 2364.

*Heck* built on the logic of *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In *Preiser,* the Court held that prisoners may not challenge a facility's denial of good-time credits pursuant to section 1983 because "[s]uch a challenge is just as close to the core of habeas corpus as an attack of the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id.* at 489, 93 S.Ct. 1827. *Preiser's* plaintiffs were prisoners in DOCS facilities who brought a section 1983 action after disciplinary actions prompted the denial of their good-conduct-time credits. *Id.* at 476, 93 S.Ct. 1827. The Court noted that habeas petitions are not limited to immediate release, and may incorporate attacks on future confinement and future release. *Id.* at 487, 93 S.Ct. 1827.

So, even if restoration of respondents' good-time credits had merely shortened the length of their confinement, rather

than required immediate discharge from that confinement, their suits would still have been within the core of habeas corpus in attacking the very duration of their physical confinement itself. It is beyond doubt, then, that the respondents could have sought and obtained fully effective relief through federal habeas corpus proceedings.

*Id.* at 487–88, 93 S.Ct. 1827. Section 1983 is couched in broad remedial terms, *Preiser* observed, but Congress set forth a more specific federal remedy when it enacted the habeas corpus provisions. *Id.* at 489–90, 93 S.Ct. 1827. The Court worried about the federalism implications of permitting a section 1983 action that affected the duration of a prisoner's confinement, observing that in 1948, Congress amended the habeas corpus statutes to require exhaustion of state remedies as a precondition to invoking federal relief. *Id.* at 489, 93 S.Ct. 1827. "It would wholly frustrate explicit congressional intent to hold that the respondents in the present case could evade this requirement by the simple expedient of putting a different label on their pleadings." *Id.* at 489–90, 93 S.Ct. 1827. Respect for a state's prerogative to hear disputes arising from its criminal justice system applies to state administration of parole as much as it does to judicial criminal process, *Preiser* held. *Id.* at 491–92, 93 S.Ct. 1827. "Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems." *Id.* at 492, 93 S.Ct. 1827.

The third Supreme Court ruling of consequence to this issue is *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). In *Edwards,* an inmate in a Washington state facility was disciplined as a result of violating prison rules, and his punishment included loss of 30 days' good-time credit. *Id.* at 643, 117 S.Ct. 1584. He alleged that the facility's disciplinary process violated his Fourteenth Amendment due process rights when corrections officials destroyed exculpatory evidence, investigated him arbitrarily, and used an illegal voice identification procedure. *Id.* at 644, 117 S.Ct. 1584. His allegations included "deceit and bias" on the part of the hearing officer, that a witness uttered untrue statements, and that he was "intentionally denied" the right to present exculpatory evidence. *Id.* at 647, 117 S.Ct. 1584. *Edwards* noted that the underlying claim differed from that of *Heck:* the *Edwards* plaintiffs sought damages arising out of procedural errors in his hearing, whereas the *Heck* plaintiff claimed that he was undeservedly denied good-time credits as a substantive matter. *Id.* at 645, 117 S.Ct. 1584. The Court found this distinction immaterial: Although the plaintiff challenged process, as opposed to substance, a finding in favor of the plaintiff would nevertheless attack the validity of the prisoner's continued confinement. *Id.* at 645–46, 117 S.Ct. 1584. *Edwards* held that "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits," and therefore was not cognizable under section 1983. *Id.* at 646, 117 S.Ct. 1584. *See Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) ("If, for example, petitioner were to seek damages for using the wrong procedures, not for reaching the wrong result, and if that procedural defect did not necessarily imply the invalidity of the revocation, then *Heck* would have no application at all.") (internal citations and quotation marks omitted).

Though none speaks directly to Boddie's circumstance, the Second Circuit has issued several rulings that further explored the boundaries set by *Heck. Amaker v. Weiner,* 179 F.3d 48, 51–52 (2d Cir.1999), held that *Heck* barred a section 1983 claim that asserted the existence of a broad con-

spiracy to frame the plaintiff for murder. The Second Circuit has made clear that *Heck* does not affect a prisoner's section 1983 claim in two circumstances: (1) when a habeas corpus petition is unavailable to the plaintiff, and (2) when the section 1983 claim does not implicate either a prisoner's conviction or duration of confinement. *See, e.g., Huang v. Johnson,* 251 F.3d 65, 74–75 (2d Cir.2001) (former prisoner may bring a section 1983 action otherwise barred by *Heck* because habeas relief was unavailable); *Jenkins v. Haubert,* 179 F.3d 19, 27–28 (2d Cir.1999) (*Heck* does not bar a section 1983 claim that challenges plaintiff's disciplinary segregation but does not implicate the duration of prison confinement); *Leather v. Eyck,* 180 F.3d 420, 423–24 (2d Cir.1999) (*Heck* did not bar section 1983 claim brought by plaintiff who was never in the custody of the state and had no remedy in habeas corpus).

I am unaware of any Supreme Court or Second Circuit decisions that address *Heck's* application to a prisoner's denial of parole. However, district courts in this Circuit have held that *Heck* precludes section 1983 actions that challenge either the conduct of a parole hearing or the denial of parole. In *Hill v. Goord,* 63 F.Supp.2d 254, 256 (E.D.N.Y.1999), plaintiff brought a section 1983 action alleging that inaccuracies in his pre-sentence report resulted in the wrongful denial of parole, and sought monetary and injunctive relief. *Hill* noted that the courts of other Circuits have held that *Heck* bars actions challenging the fact or duration of parole release. *Id.* at 261 (collecting cases). *Hill* concluded that section 1983 did not provide a vehicle for the plaintiff to challenge the denial of parole:

> In the Court's view, because Hill's Section 1983 claim necessarily implicates the validity of his continuing confinement, it does not accrue unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of writ of habeas corpus. *See Heck,* 512 U.S. at 487, 114 S.Ct. 2364. For this reason, the Court is of the opinion that Hill fails to state a cognizable claim under Section 1983 as to any of the defendants and, therefore, his Complaint should be dismissed in its entirety as to all of the defendants pursuant to Rule 12(b)(6).

*Id.* at 261–62.

Likewise, in *Odom v. Pataki,* 2001 WL 262742, at *1 (S.D.N.Y. Mar.15, 2001), a New York state prisoner brought a section 1983 action challenging a denial of good time credits that, he claimed, prevented his release on parole. Judge Chin dismissed the complaint and held that the plaintiff could bring a claim pursuant to section 1983 "only if he can show that his sentence was reversed or otherwise invalidated." *Id.* at *3. *See Baczkowski v. New York State Dep't of Corrections,* 2004 WL 1465813, at *2 (W.D.N.Y. June 24, 2004) (section 1983 does not provide for a challenge to parole revocation because it would circumvent the exhaustion prerequisites of habeas corpus relief); *Harris v. City of New York,* 2003 WL 554745, at *3 (S.D.N.Y. Feb.26, 2003) (*Heck* bars section 1983 claim that challenges the fact or duration of confinement based on the revocation of parole); *Lampkin v. New York City Department of Probation,* 2001 WL 210362, at *2–3 (S.D.N.Y. Feb.1, 2001) (though plaintiff's section 1983 action alleging false information in pre-sentence and pre-parole reports framed his claim as arising over "incidental limits" on daily life, the action "necessarily implies" the invalidity of parole decisions, and thus barred by *Heck* ); *Sumter v. Marion,* 1999 WL 767426, at *5 (S.D.N.Y. Sept.28, 1999) (plaintiff's section 1983 claim against parole officials alleging that they falsified evidence barred by *Heck* ).

I find these district court applications of *Heck* to be persuasive, and conclude that

Boddie's claims are similarly barred. Assuming *arguendo* that both the negative recommendation letter authored by defendant Donnelly and his pre-sentence report considered in parole hearings contained inaccuracies that violated plaintiff's Fourteenth Amendment rights, those inaccuracies go toward Boddie's denial of parole. Boddie's action therefore constitutes a direct attack on the validity of his continued confinement. Though Boddie protests that he seeks damages for use of an erroneous procedure and not for an incorrect parole determination, any ruling in his favor would necessarily call into question the determination to deny him parole and, consequently, the duration of his confinement. It is the *duration,* and not the *condition,* of his confinement that are directly implicated by his claim. Nearly every claim in this action implicates the length of Boddie's confinement and his denial of parole, whether it is the alleged impropriety of the negative recommendation letter (the claims against Morgenthau, Kindler, and Donnelly), the Department of Probation's decisions concerning the content of Boddie's probation files (the claims against Dodds and the New York County Department of Probation), or the alleged loss of good time and conditional release credit (the claims against Goord and Travis). Granting relief on these claims would "necessarily imply the invalidity" of the parole board's determinations, and the accuracy of the information upon which it relied. *Heck,* 512 U.S. at 487, 114 S.Ct. 2364.

*Heck* applies to Boddie's claims for both monetary and injunctive relief. Although *Preiser* indicated that the injunctive nature of the relief influenced its holding, 411 U.S. at 494, 93 S.Ct. 1827, *Heck* made clear that *Preiser's* logic extends to money damages as well. *Heck,* 512 U.S. at 486–89, 114 S.Ct. 2364. In the present action, Boddie seeks both monetary and injunctive relief from the defendants. Together, *Heck* and *Preiser* bar both forms of relief in this action. Unlike the injunctive relief in *Edwards,* which did not necessarily implicate the invalidity of the duration of the plaintiff's sentence,[4] the injunctive relief here directly relates to the parole board's determinations regarding the plaintiff, in that it seeks to compel specific action pertaining to the content of Boddie's parole records.

Boddie does not allege that his conviction has been invalidated, as is necessary to bring a section 1983 claim in an action attacking the duration of confinement. *See Heck,* 512 U.S. at 487, 114 S.Ct. 2364. Nor does it appear that the procedural vehicle of a habeas corpus petition for a writ is unavailable to him. *See Huang,* 251 F.3d at 74–75. Boddie appears to be well aware of the existence of the Great Writ, and has contested his parole denials in previous petitions for a writ of habeas corpus. *See Boddie v. New York State Division of Parole,* 285 F.Supp.2d 421 (S.D.N.Y.2003) (denying petition for writ of habeas corpus challenging Boddie's 2000 parole denial); *Boddie v. New York State Division of Parole,* 288 F.Supp.2d 431 (S.D.N.Y.2003) (denying habeas petition challenging Boddie's 1998 parole denial).[5]

---

**4.** In *Edwards,* the Supreme Court declined to dismiss the plaintiff's claim for injunctive relief. The *Edwards* plaintiff alleged that prison officials did not date-stamp witness statements that were made in cases involving "jail house attorney[s]" in an effort to weaken any due process challenges brought in the future. *See Edwards,* 520 U.S. at 648, 117 S.Ct. 1584. "[A] prayer for such prospective relief will not

'necessarily imply' the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983." *Id.*

**5.** I will not *sua sponte* convert this action into a petition for habeas corpus relief. As explained in *Adams v. United States,* 155 F.3d 582, 583 (2d Cir.1998) (*per curiam* ), the procedural mechanisms adopted in the Antiter-

However, dismissals made pursuant to *Heck* are without prejudice, with reinstitution contingent upon any future determination that the plaintiff's conviction or continued incarceration is invalidated or called into question. *Amaker*, 179 F.3d at 52.

Lastly, the Complaint sets forth three narrow claims that are not barred by *Heck*. In his third and fourth causes of action, Boddie alleges that errors in the presentence report and the negative recommendation letter affected his security classification, his participation in the "Sex Offender Program," and his transfers between facilities. (Complaint ¶¶ 95, 121, 150) While the Complaint is unclear as to how Boddie suffered damages from these alleged wrongdoings, they do not implicate the duration or validity of Boddie's confinement. Liberally interpreted, they are directed toward the conditions of Boddie's confinement, therefore properly brought as part of a section 1983 action and not subject to dismissal under *Heck*.[6] As noted below, however, these claims are dismissed in substantial part on separate grounds.

Under *Heck* and its progeny, all other aspects of the complaint are dismissed.

### 2. *Plaintiff Fails to State Claims Against Individual Defendants*

Were *Heck* inapplicable, much of the Complaint would nevertheless be dismissed because Boddie fails to state a claim as to the liability of the individual defendants. I address each defendant in turn.

### A. *Boddie Fails to Allege the Personal Involvement of Defendants Goord and Travis*

Defendants Goord and Travis move to dismiss Freeman's claims based on their lack of personal involvement in the violations Boddie alleges. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)). There are five ways in which a plaintiff may show the personal involvement of a defendant in a constitutional deprivation: (1) the defendant directly participated in the alleged constitutional violation, (2) the defendant, having been informed of a violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which constitutional violations occurred, or allowed the continuation of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) the defendant displayed deliberate indifference to the inmates' rights by failing to act on information that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Liability may not be anchored in a theory of *respondeat superior*. *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998) (*per curiam*). "The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insuf-

rorism and Effective Death Penalty Act of 1996 are such that converting a non-habeas complaint into a habeas action "may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated."

**6.** While at least one ruling in this district has held that *Heck* bars section 1983 suits over

conditions of imprisonment that necessarily implicate the fairness of parole denial, *see Gomez v. Kaplan*, 2000 WL 1458804, at *6–11 (S.D.N.Y. Sept.29, 2000), I cannot, without more, conclude at this point that Boddie's claims implicating prison transfers, classification, or participation in the sex offender program necessarily implicate his parole denial.

ficient to sustain [a] claim." *Colon,* 58 F.3d at 874.

While mere receipt of a letter from a prisoner is insufficient to establish individual liability, an official's actions and responses arising out of a grievance may. In *Greenwaldt v. Coughlin,* 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995), Judge Preska noted that "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." "Personal involvement will be found, however, where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002). *See also Freeman v. Goord,* 2004 WL 2002927, at *5–6 (S.D.N.Y. Sept.8, 2004) (distinguishing in a Rule 12 motion actions taken in response to constitutional claims raised in a prisoner's letter versus an official's mere receipt of a letter); *Gates v. Goord,* 2004 WL 1488405, at *9 (S.D.N.Y. July 1, 2004) (prison official's receipt of inmate's letters insufficient to establish personal liability).

The Complaint offers no claims that imply a nexus between allegedly unconstitutional acts and defendant Travis. Boddie merely alleges that he transmitted a letter to Travis. There is no allegation that Boddie told Travis that he was harmed by conduct that violated the U.S. Constitution. The existence of this single letter of November 9, 1998 is insufficient to survive a Rule 12 motion under *Colon.* Similarly, Boddie's claim against Goord does not indicate a nexus between any unconstitutional acts and defendant Goord. There is no claim that the letters Boddie sent Goord on May 15, May 25, and June 16, 2002 notified Goord of any violation of federal law or the U.S. Constitution.

Drawing every reasonable inference in favor of the plaintiff and accepting the truth of his allegations, as required by Rule 12, the Complaint alleges at most that Boddie informed Goord and Travis of bureaucratic error. Section 1983 shields against "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983 (West 2003). Because Boddie fails to allege that he alerted these two defendants of actions barred by the Constitution or federal law, he fails to state a claim that they were involved in conduct barred by section 1983.

While a plaintiff many not pursue money damages against an individual defendant who lacks personal involvement with the underlying offense, that does not preclude a plaintiff from seeking prospective, injunctive relief against the same defendant. " 'Rather, actions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action.' " *Loren v. Levy,* 2003 WL 1702004, at *11 (S.D.N.Y. March 31, 2003) (quoting *Davidson v. Scully,* 148 F.Supp.2d 249, 254 (S.D.N.Y.2001)); *accord Glass v. Coughlin,* 1991 WL 102619, at *2 (S.D.N.Y. May 29, 1991) ("[P]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983."). An injunction may be issued only if the state official has the authority to perform the required act. *Loren,* 2003 WL 1702004, at *11.

Having reviewed the memorandum of law offered by Goord and Travis, I conclude that Goord sets forth no argument that supports the dismissal of injunctive relief pertaining to Boddie's security classification, transfers, and his status in the

sex offender program. The only Second Circuit ruling that defendants offer to show plaintiff has no constitutional right to be placed in a particular prison program found that a Connecticut inmate has no liberty interest in the accrual of good-time credits. *Abed v. Armstrong,* 209 F.3d 63, 66–67 (2d Cir.2000). *Abed* did not address the liberty interest that may (or may not) be found in a prisoner's classification, transfers, or rehabilitation regimen. While Boddie's claims may be meritless, Goord has not shown that Boddie fails under Rule 12(b)(6) to state a claim for prospective injunctive relief on these claims.

Boddie's claims seeking monetary damages against Goord and Travis are dismissed in full. Boddie's claims against Goord seeking injunctive relief remain, limited solely to his security classification, transfers, and placement in the sex offender program.

B. *Defendants Donnelly, Morgenthau, and Kindler are Entitled to Absolute Immunity*

■ Donnelly moves to dismiss Boddie's claim against her based on the immunity granted to prosecutors for acts within the scope of their duties as advocate of the state. I begin by noting that a lawsuit bringing claims over the administration of the district attorney's office is treated as a suit against the municipality

According to the Supreme Court, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Courts may consider absolute immunity on a 12(b)(6) motion to dismiss when facts establishing the defense may be "gleaned" from the complaint. *Hill v.*

*City of New York,* 45 F.3d 653, 662 (2d Cir.1995).

The Second Circuit, in *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1149–50 (2d Cir.1995), affirmed the dismissal of claims that a prisoner brought against numerous prosecutors. In *Pinaud,* the complaint set forth seven examples of harms allegedly triggered by prosecutorial conduct, including misrepresentations to the U.S. Bureau of Prisons and an improper increase in the plaintiff's bail. *See id.* at 1149. The Second Circuit applied functional criteria to determine which prosecutorial actions occurred in an adjudicative context, and determined that "we are bound to hold that a prosecutor's communications with other officials directly pertaining to matters of sentencing are entitled to absolute immunity." *Id.* at 1149–50 (citing *Allen v. Thompson,* 815 F.2d 1433, 1434 (11th Cir. 1987)). *See also Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993) (absolute prosecutorial immunity most often applies to decisions of whether to institute prosecution and the performance of litigation-related activities, with administrative and investigative duties meriting lesser protection of qualified immunity); *Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.) *(per curiam ), cert. denied* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988) (prosecutors are entitled to absolute immunity for activities " 'intimately associated with the judicial phase of the criminal process,' " which includes providing information to New York State parole authorities) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)); *cf. Scotto v. Almenas,* 143 F.3d 105, 113 (2d Cir.1998) (officer in the division of parole is entitled to absolute immunity for signing order that led to plaintiff's eventual parole revocation because action was prosecutorial in nature).

A prosecutor's absolute immunity has not been narrowly construed. *See Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir.1987) ("[U]nless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process."). District courts have applied absolute prosecutorial immunity to claims similar to Boddie's. In *Hrubec v. City of New York,* 1995 WL 422023 (S.D.N.Y. July 13, 1995), a *pro se* prisoner alleged that the defendant, an assistant district attorney, furnished inaccurate and incomplete information that prompted his parole revocation. *See id.* at *1. Judge Sotomayor (who was then in the district court) applied *Pinaud* in holding that prosecutorial communications about sentencing receive absolute immunity. *Id.* at *2. *See also Romer v. Travis,* 2001 WL 220115, at *4–5 (S.D.N.Y. Jan.31, 2001) (granting absolute prosecutorial immunity to defendants whose alleged falsehoods may have affected parole decision).

There is no basis to distinguish Boddie's allegations against Donnelly from those granted absolute immunity and dismissed in the courts of this Circuit. Donnelly acted as the prosecuting attorney in the trial that led to Boddie's conviction, and her recommendations concerning Boddie's sentencing arose directly from responsibilities that she assumed in that role. Because Boddie anchors his cause of action on Donnelly's communications affecting the duration of Boddie's sentence, Donnelly is entitled to absolute immunity, and the claim against her is dismissed.

■ Defendants Morgenthau and Kindler are similarly entitled to absolute immunity. "To the extent the supervision or policies concern the prosecutorial decisions for which the ADAs have absolute immunity, then those derivative allegations against supervisors must also be dismissed

on the ground that the supervising district attorneys have absolute immunity for the prosecution-related decisions of their subordinates and because Section 1983 supervisory liability depends upon the existence of an underlying constitutional violation." *Sheff v. City of New York,* 2004 WL 594894, at *6 (S.D.N.Y. March 24, 2004) (citing *Poe v. Leonard,* 282 F.3d 123, 142 (2d Cir.2002)); *Fox v. City of New York,* 2004 WL 856299, at *11 (S.D.N.Y. Apr.20, 2004) (granting absolute immunity to District Attorney when subordinate was found immune for deciding whether to commence prosecution); *Pinaud v. County of Suffolk,* 798 F.Supp. 913, 918 (E.D.N.Y.1992), *aff'd in part, rev'd in part,* 52 F.3d 1139 (2d Cir.1995) ("[W]hen the actions of a prosecutor are subject to absolute immunity, a supervising prosecuting attorney is also covered by that immunity.") (citing *Buckley v. Fitzsimmons,* 952 F.2d 965, 966 (7th Cir.1992); *Haynesworth v. Miller,* 820 F.2d 1245, 1269 (D.C.Cir.1987)).

Boddie's claims against Morgenthau and Kindler arise out of their decisions not to act on his concerns about Donnelly's letter. As such, Boddie's claims against them arise directly from his displeasure with Donnelly's recommendation letter. Absolute immunity protects them both from liability arising out of Donnelly's conduct.

Defendant Dodds similarly moves to dismiss the Complaint on grounds of absolute immunity. As an attorney employed by the City of New York Department of Probation, Dodds is entitled to immunity for conduct undertaken as an arm of the court, in light of allegations that a pre-sentence report was insufficiently investigated and inaccurate. *Hili v. Sciarrotta,* 140 F.3d 210 (2d Cir.1998). It is unclear at this stage whether Dodds's conduct arose in an adjudicative capacity, which would entitle her to immunity, or an administrative capacity, which would not. *See Farrell v.*

*Burke,* 1998 WL 751695, at *4 (S.D.N.Y. Oct.28, 1998). Dodds's motion to dismiss on grounds of absolute immunity is therefore denied.

The claims against Donnelly, Morgenthau and Kindler are dismissed.

### C. *The New York City Department of Probation is a Non–Suable Entity*

Section 396 of the New York City Charter states:

> All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided as law.

(N.Y. City Charter, Chapter 17, § 396) Courts applying New York law have routinely held that departments of the City of New York are immune from suit. *See, e.g., Bailey v. New York City Police Department,* 910 F.Supp. 116, 117 (E.D.N.Y. 1996) (New York City Police Department immune from suit). The New York City Department of Probation is administered under the supervision of the city's mayor. N.Y. Exec. L. § 255 (McKinney's 2001). The Department of Probation, as an agency of the City of New York, cannot be named as a defendant in this action.[7]

Plaintiff's claim against the Department of Probation is dismissed.

### D. *Sovereign Immunity*

■ All defendants move to dismiss Boddie's claims brought against them in their official capacities, pursuant to the Eleventh Amendment of the U.S. Constitution. The Supreme Court in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), observed that the Eleventh Amendment confirms two presuppositions of constitutional proportion: "first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent,' . . . ." (citations omitted) (alteration in original).[8] *See also Federal Maritime Comm'n v. South Carolina State Ports Authority,* 535 U.S. 743, 766, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) ("Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather, it provides an immunity from suit."). The Eleventh Amendment also bars suits against state agencies if the state is the real party in

---

**7.** If Boddie intended to bring a section 1983 action against the City of New York, the Complaint fails to state a claim. A municipality may not be liable unless the plaintiff's rights were violated pursuant to official municipal custom or policy. *See Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Complaint contains no such allegation.

**8.** The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." While the text of the amendment does not purport to provide a defense to a suit by a citizen of the same state as the defendant state, the amendment has been read more broadly to be reflective of the underlying sovereign immunity of a state. *Seminole Tribe,* 517 U.S. at 54, 116 S.Ct. 1114. "[D]espite the limited terms of the Eleventh Amendment, a federal court [can] not entertain a suit brought by a citizen against his own State." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). "In short, the principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III. . . ." *Id.* at 98, 104 S.Ct. 900.

interest. *See Farid v. Smith*, 850 F.2d 917, 920–23 (2d Cir.1988) (superintendent of correctional facility immune under Eleventh Amendment to the extent sued in his official capacity); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n. 1 (2d Cir.1991) (DOCS is a state agency and therefore entitled to assert Eleventh Amendment immunity).

The Eleventh Amendment immunizes state officials against damages for conduct undertaken in their official capacity only if the state is the "real, substantial party in interest." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Section 1983 does not override Eleventh Amendment immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The claims against defendants in their official capacities make it clear that the state is the real party in interest. To the extent that the plaintiff seeks monetary damages against the defendants for actions taken in their official capacities, Boddie's claim is dismissed. The Eleventh Amendment does not bar the claims against defendants in their official capacities for prospective injunctive relief, *see Davis v. New York*, 316 F.3d 93, 102 (2d Cir.2002), but as discussed above, are dismissed under *Heck*, with the exception of the claims against Goord pertaining to plaintiff's security classification, transfers, and status in the sex offender program.

*Conclusion*

The motion to dismiss brought by defendants Donnelly, Morgenthau, and Kindler is granted. The motion to dismiss brought by defendants Dodds and the New York County Department of Probation is granted. The motion to dismiss brought by defendants Travis and Goord is granted to Travis in full, granted to Goord for all claims seeking monetary relief, and denied to those claims against Goord that seek injunctive relief pertaining to Boddie's security classification, transfers, and status in the sex offender program.